## STATE v. CHARLES H. BROWN.

### *Attempt—Embracery—Indictment.*

1. An indictable attempt to commit a crime is such an intentional preliminary guilty act as will apparently result in a deliberate crime.

2. The acts constituting the alleged attempt should be set forth in the indictment.

3. Embracery consists in such practices as tend to unduly influence the administration of justice by improperly working upon the minds of the jurors. To constitute the offence, there must be an *attempt* to carry into effect the corrupt purpose—to form the purpose and give it expression merely in words, is not sufficient.

4. Several indictments, preferred at different times, but alleging the same facts in different forms, will be treated as separate counts of one indictment.

(*State* v. *Johnson*, 5 Jones. 22: and *State* v. *Watts*, 82 N. C., 656; cited and approved).

The defendant was tried and convicted at August Term, 1886, of the Superior Court of LENOIR county, before *Clark*, *Judge*, of the crime of EMBRACERY, and from the judgment thereon, appealed to the Supreme Court.

The case is stated in the opinion.

*Attorney-General*, for the State.
*Mr. George V. Strong*, for the defendant.

SMITH. C. J. The defendant is charged with the offence known in the criminal law as embracery, committed in a wilful and corrupt attempt to influence the deliberations and verdict of a petty jury empanelled to pass upon the guilt of J. L. Stroud and Samuel Howard, accused of and tried for larceny, after their retirement. The indictments, three in number, found by the grand jury at the same term and treated as separate counts in a single bill, under the ruling in

STATE *v.* BROWN.

*State* v. *Johnson,* 5 Jones, 221, and *State* v. *Watts,* 82 N. C., 656, vary the form of the charge in slight particulars only, and aver in substance the following overt acts, in which the offence consists:

The first count, after imputing the corrupt purpose, alleges that the defendant approached the officer in charge of the jury, who had retired to their room to make up their verdict, and inquired as to the opinion of the jurors, saying that he "had come to give them instructions," and asked the officer if any such were needed, to let him know and he would give them. The second count imputes the same criminal attempt, through " promises, persuasions, entreaties and the like," setting out the same general act as in that preceding. The third count contains similar averments as to what transpired with the officer at or near the jury room, and alleges that the persons on trial were clients for whom the defendant had appeared in the prosecution, and reiterates the conversation had with the officer.

The offence imputed is thus described by Serjeant Hawkins, in his Pleas of the Crown, vol. 1, ch. 85: "Any attempt to corrupt or influence or instruct a jury, or any way to incline them to be more favorable to the one side than to the other, by money, promises, letters, threats or persuasions, except only by the strength of the evidence and the agreements of counsel in open Court, at the trial of the cause, is a proper act of embracery, whether the jurors on whom such attempt is made, give any verdict or not, or whether the verdict given be true or false." In illustration, he remarks: "It hath been adjudged that the bare giving money to another, to be distributed among jurors, is an offence of the nature of embracery, whether any of it be afterwards actually so distributed or not."

In fewer words, it is defined by another eminent author as a "species of maintenance," and he adds, "consists in such practices as tend to affect the administration of justice by

improperly working upon the minds of jurors." 1 Russ. Cr. 183. "It is an indictable offence," remarks Mr. Wharton, "to approach jurymen for the purpose of intimidating or influencing them." 3 Wharton, Cr. Law, §3447.

It is manifest that more is required to constitute the crime than the formation of a corrupt purpose in the mind and giving it utterance in words. The attempt must be made to carry it into effect, by some direct or indirect approach to and communication with the jury, or, as in the case supposed, the delivery of money or something of value to some one, to be used in operating upon the minds of the jurors. The attempt is as truly a criminal act as its full consummation would be. Assuming the averred charges to be fully sustained by the proofs, does the indictment impute a punishable offence? We think it does not. No communication with the jurors is alleged, nor any attempt to have it; what the defendant said and did was to the officer, and an expression of his readiness then and there to give instructions (in its unfavorable sense for the defendant's advice) to the jury, or thereafter, if the jury should need instructions or advice in regard to the case.

It is true the indictment alleges an approach to the jury, and to the officer, with the criminal intent, but the acts done, are, as they should be, set out, and in them is the imputed offence made to consist.

It is not averred that what was said reached the ears of the jury, or was intended to be heard by them, since the words were addressed to the officer, and at the most were a suggestion of a readiness then, or thereafter, if the jury should want further advice to give it himself. It was not to corrupt the officer in his discharge of duty—itself a highly criminal act—or through him to act upon the minds of the jury, but at most a communication to him of what he, the defendant, was present prepared to do, or would thereafter do, if the wishes of the jurors were conveyed to him.

Highly improper as was the conduct of the defendant, more so from his relation to the cause as counsel to the parties on trial, and foolish and absurd as was the *suggestion* of his *giving instructions*, which, being authoritative, could proceed only from the presiding Judge, we think the conduct of the defendant stops short of what is required to constitute the corrupt and unlawful *attempt*, which makes the crime. "An indictable attempt to commit a crime is such an intentional preliminary guilty act," in the defining words of Mr. Wharton, "as will apparently result, in the usual course of natural events, if not hindered by causes outside of the active will, in a deliberate crime." 2 Whar. C. L., §2686.

But embracery, like a solicitation to commit crime, is independently criminal, and the subject of a public prosecution. Yet the ultimate purpose must be developed and find expression in some act looking to an interference with the due course of judicial administration, and this as well when failing as when successful. The conversation with the officer, censurable and unprofessional as it was, does not in our view contain the necessary elements of an indictable offence in itself, nor was it a solicitation to induce his interference with the jury consultations, nor was any tampering with that body alleged; but the misconduct is in an inquiry as to how the jurors stood, with an offer to the *officer*, not requested to be conveyed to the jury, then or thereafter, to advise them as to their duty in the premises.

"Attempt," (we quote from §2703 of the same work,) "is a term peculiarly indefinite," and consequently the facts which develop the attempt, should be set out so as to show that the attempt is itself criminal. This has been done in the present case, and we think they fail to ‸‸‸ ‸‸he crime charged.

We have not examined, in order to dispose of the exceptions taken during the trial, since the defects in the indict-

ment require us to arrest the judgment, as moved by the counsel of the defendant. Let this be certified for this end to the Superior Court.

Error. Reversed.